IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOYCE HOLDER TRUST and
HAIR FAMILY LIMITED PARTNERSHIP,
for themselves and all others similarly
situated,

                        Plaintiffs,

vs.                                     Civ. No.  11-579 JCH/LAM

APACHE CORPORATION,

                        Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's *Motion for Transfer of Venue* [Doc. No. 10], filed August 12, 2011.  In that motion, Defendant Apache Corporation ("Apache") requests transfer of this case to the United States District Court for the Southern District of Texas.  Plaintiffs oppose the transfer.  Also at issue is a motion to supplement the record by the Plaintiffs.  *See* Doc .No. 21. After reviewing the briefs filed by the parties and the applicable legal authorities, the Court concludes that it will consider Plaintiffs' supplemental evidence and that Apache's motion to transfer venue should be granted.

## BACKGROUND FACTS

Apache is a Delaware corporation with its principal place of business in Houston, Texas. Apache operates thousands of oil and gas wells in the Permian Basin of New Mexico and Texas. As operator, Apache markets and sells the vast majority of the oil and gas produced by those wells. Plaintiffs are royalty interest owners suing Apache for underpayment of oil and gas royalties. According to Plaintiffs, Apache was contractually bound to pay royalties based upon the actual

prices that Apache received for the oil and gas it obtained from the wells. Instead, they allege that it paid the royalties using an artificially low "weighted average sales price," or "WASP."

The Joyce Holder Trust and its Trustee, Joyce A. Holder ("Holder"), are citizens of New Mexico residing in Lovington. Holder owns a royalty interest in two well leases in Lea County, New Mexico. The Hair Family Limited Partnership ("HFLP") is a citizen of Texas. Its general partner is CHFH Minerals & Royalty LLC, a Texas limited liability company with its principal place of business in Midland County, Texas, and it too is a citizen of Texas. HFLP is a royalty owner in numerous oil and gas leases in various counties in Texas.

In their complaint, Plaintiffs ask the Court to certify a class comprised of all royalty interest owners in Apache-operated oil, gas and mineral leases in Texas and New Mexico (not limited to those in the Permian Basin) who have been paid royalties using the WASP method. Plaintiffs assert claims against Apache for breach of contract, conversion, fraudulent concealment, unjust enrichment, and for an accounting. They also seek punitive damages.

## LEGAL STANDARD

Under 28 U.S.C. § 1404(a), a district court may transfer a case to another venue in which it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." "The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991). In deciding whether the movant has met that burden, a district court should consider:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of

> questions arising in the area of conflict of laws; the advantage of having a local court
> determine questions of local law; and, all other considerations of a practical nature
> that make a trial easy, expeditious and economical.

*Id*. at 1516 (internal quotation marks omitted).  Unless weighing these factors demonstrates that "the

balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be

disturbed."  *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010)

(brackets and internal quotation marks omitted).

## DISCUSSION

The first factor the Court must consider is the plaintiff's choice of forum.  Obviously, in this

case the plaintiffs have chosen the District of New Mexico as their forum, and that choice is

accorded significant weight.  However, that weight is reduced under the circumstances of this case.

First, only one (Holder) of the two Plaintiffs is a New Mexico resident.  The other, HFLP, is located

in Midland, Texas.  Plaintiff HFLP argues that the District of New Mexico (Albuquerque) is closer

to Midland than is the Southern District of Texas (Houston), citing a difference of 120 miles and a

drive time that is two hours shorter.  The Court is not particularly persuaded by this reasoning, as

it appears to the Court that both forums present similar inconvenience to HFLP.  Second, Plaintiffs

seek certification of a large class of persons, most of whom do not reside in New Mexico.  In fact,

the evidence shows that 7,599 of the royalty interest owners receive their royalty checks in Texas,

while only 396 have a New Mexico mailing address.  Affidavit of Brad Stull, Ex. A to Doc. No. 10.

These numbers suggest that most of the putative plaintiffs reside in Texas, and therefore as a class

a Texas forum is likely more convenient than a New Mexico court.  The remaining 3,688 royalty

interest owners have addresses indicating that they reside in other states as well as other countries.

*Id*.  Similarly, of Apache's 34,612 leases in Texas and New Mexico, only 2,726 relate to wells in

New Mexico.  The remaining 31,886 are in Texas.   *Id*.  Finally, the $1,587.06 in royalties paid to

3

New Mexico Plaintiff Holder over a four year period are but a tiny fraction of the more than $5 million that Plaintiffs allege is at issue in this case. These facts demonstrate that the Plaintiffs' interest in their chosen forum is not particularly strong.  As the Supreme Court noted in *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947), "where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened."

The next factor is the accessibility of witnesses and other proof, including the availability of compulsory process to insure attendance of witnesses.  Here, Plaintiffs have alleged that virtually all of the information regarding the calculation of royalties paid to them is in the hands of Apache. *See* Complaint, Doc. No. 1, at ¶¶ 21-22.   Apache has submitted evidence demonstrating that the relevant evidence regarding royalty payments, as well as the underlying oil and gas sales that affect those payments, is in Houston, Texas.  *See* Affidavit of Brad Stull, Ex. A to Doc. No. 10.  Similarly, the Apache employees who performed and have knowledge regarding Apache's sales, royalty calculations, royalty payments, maintenance of leases and communications with royalty owners all reside in the Houston area. *Id.*  It is undisputed that all of those records and witnesses, which affect not only Apache's ability to prove its defense, but also Plaintiffs' ability to prove their claims, are in the Southern District of Texas.   Plaintiffs present no evidence suggesting that any of the documentary evidence or witnesses, other than Holder, are in New Mexico.  On the other hand, Plaintiffs do correctly point out that Apache can require its employee-witnesses to testify in whatever forum is chosen, and that compulsory attendance of witnesses via subpoena at depositions and trial should not be necessary.  While that is true, the Court is not convinced that it makes sense

4

to require those Apache employees to travel to New Mexico.  Considering all of the foregoing, the Court concludes that this factor weighs in favor of transfer.  *See Koster v. (American) Lumberman's Mut. Cas. Co.*, 330 U.S. 518, 526 (1947) (giving consideration to location of witnesses and evidence in determining appropriate forum for stockholder's derivative action).

Plaintiffs suggest that the Southern District of Texas is not the proper forum because none of the wells at issue are located in that district.  However, attached to its reply brief Apache presents evidence that in fact 1,523 of its Texas wells are located within the Southern District of Texas.  Stull Aff., Ex. B to Doc. No. 19.  However, in the Court's view this debate misses the point.  The Plaintiffs have alleged violations of their contractual, statutory, and common law rights to obtain payment for their natural resources according to a certain formulation.  The fact that title to the oil and gas passed from the royalty owners to Apache at the wellhead does not change the fact that the alleged wrong–improper calculation and payment of royalties–occurred in Houston, where Apache made decisions regarding sales of oil and gas and calculations of payments to royalty holders.  The source of the wrong is the alleged miscalculation and underpayment of royalties, and that conduct occurred in the Southern District of Texas.  The location of the wells bears no relevance to determining whether Apache's conduct was wrongful.

Next the Court considers the cost of making the necessary proof.  Again, all of Apache's records and witnesses are in Houston, making it more cost-effective to present their live trial testimony in the Southern District of Texas.  With regard to deposition testimony, Plaintiffs correctly point out that typically all witnesses are deposed where they live, making the cost of taking depositions the same regardless of the venue of the case.  One of the two named plaintiffs and the overwhelming majority of the putative class members reside in Texas as well, and therefore it seems reasonable to conclude that their travel to the Southern District of Texas would be faster and cheaper

5

than travel to the District of New Mexico.  Thus, to the extent that the Plaintiffs will have live trial testimony to present, on balance it will be cheaper to try the case in Texas.  On the other hand, the Plaintiffs correctly point out that modern technology has made it considerably cheaper to store, manage, organize, and transport records and documents than ever before.  This somewhat undermines Apache's contention that the location of the documentary evidence in Houston is a determining factor.  In short, while this factor cuts both ways, on balance it weighs in favor of transfer.

The fourth factor is the enforceability of a judgment if one is obtained.  While Apache is a Delaware corporation, its headquarters and principal place of business is in Houston, Texas.  Thus, it would be considerably simpler for the Southern District of Texas to enforce any judgment that the Plaintiffs might obtain.  This factor weighs in favor of transfer.

Neither Plaintiffs nor Apache have discussed the next factor, the relative advantages and obstacles to a fair trial.  The Court is aware of no obstacles to a fair trial in either forum, so this factor is neutral.

The next factor, difficulties that may arise from congested dockets, is balanced slightly in favor of transfer.  Both the District of New Mexico and the Southern District of Texas are incredibly busy, with a very high number of civil and criminal filings per judgeship.  However, as Plaintiffs correctly point out, the median time to trial in the Southern District of Texas is approximately 33% faster in the Southern District of Texas than it is in the District of New Mexico.

Neither party has addressed the possibility of the existence of questions arising in the area of conflict of laws.  Thus, the Court concludes that this factor is neutral.

Next, the Court must consider the advantage of having a local court determine questions of local law.  As Apache points out, with respect to the wells located in Texas, Plaintiffs have alleged

6

as part of their fraudulent concealment claim that Apache violated Section 91.501 of the Texas Natural Resources Code by failing to include on each monthly royalty check the actual price per MCF and barrel received for the sale of the gas and oil.  Plaintiffs have alleged no violation of any New Mexico statute.  On the other hand, it is not clear how important a role the Texas statute will play in litigating the claims against Apache.  Furthermore, the remainder of Plaintiffs' claims are common law torts, and Apache does not contend that New Mexico and Texas common law vary in any relevant aspect.  Thus, this factor weighs in favor of transfer, but only slightly.

Finally, Plaintiffs argue that the State of New Mexico is a leaseholder with "substantial royalty interests in a number of the leases and units in New Mexico at issue in this case," Doc. No. 17 at 7, and therefore it is a member of the putative class or a potential intervenor.  They further contend that the State of New Mexico would be greatly inconvenienced by having to litigate the case in Texas, which weighs in favor of denying the motion to transfer.  Plaintiffs present two sources in support of these assertions.  The first is the affidavit of Barry Crutchfield, Ex. 1 to Doc. No. 17 at ¶ 8, which contains vague and conclusory hearsay statements by an unidentified employee of the New Mexico State Land Office.  That evidence is inadmissible and will not be considered.  The second is a September 15, 2011, letter from Hugh W. Dangler, Associate Counsel, State of New Mexico Commissioner of Public Lands.  This letter is the subject of Plaintiffs' *Motion to Supplement Record* [Doc. No. 21].[1]  In that letter, Mr. Dangler states that the State Land Office has an interest in "many" of the Apache wells listed in an unidentified document; he does not specify how many Apache wells the State Land Office has an interest in, though he does identify two wells by name

---

[1] The Court will grant the motion to supplement, though as explained herein the letter from the Office of the Commissioner of Public Lands does nothing to alter the analysis of the motion to transfer venue.

and number.  He then goes on to say that the "State Land Office takes no position at this time in the law suit at issue."  The letter does not set forth any facts to conclude that the State of New Mexico, if it were to become a party to the case, would by unduly inconvenienced by transfer to the Southern District of Texas.  Furthermore, Plaintiffs cite no law suggesting that the interests of a State litigant carry any particular weight in the analysis of a motion to transfer venue.

The merely potential involvement of the New Mexico State Land Office carries little weight in the decision whether to transfer venue.  The State of New Mexico is not currently a party to the case, it takes no position in the case, and it is far from clear that it will ever become a plaintiff.  Under these circumstances, speculation that the State of New Mexico might become involved in the litigation does not weigh in favor of keeping the case in the District of New Mexico.

In short, this is a case that appears to have relatively little connection to the District of New Mexico compared to its significantly greater roots in the Southern District of Texas.  After considering all the factors set forth by the Tenth Circuit in *Chrysler Credit Corp.*, this Court concludes that the District of New Mexico is inconvenient, and for the convenience of parties and witnesses, in the interest of justice, the case should be transferred to the Southern District of Texas.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Supplement Record [Doc. No. 21] is **GRANTED**, Defendant's *Motion for Transfer of Venue* [Doc. No. 10] is **GRANTED**, and the case is hereby **TRANSFERRED** to the Southern District of Texas.

**UNITED STATES DISTRICT JUDGE**

8